IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVNAIA

| | | |
|---|---|---|
| **SIERRA N. HARTSOUGH**, | : | |
| | : | |
| *Plaintiff*, | : | No._____ |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| **PRIMECARE MEDICAL, INC.**, | : | JURY TRIAL DEMANDED |
| | : | |
| *Defendant*. | : | (Judge     ) |
| | : | |

## COMPLAINT

Plaintiff, Sierra N. Hartsough ("Plaintiff" or "Ms. Hartsough"), by and through undersigned counsel, Brian C. Caffrey of Scaringi & Scaringi, P.C., hereby files this Complaint against PrimeCare Medical, Inc. ("Defendant" or "PrimeCare") and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

2. Venue is proper in the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because Defendant is located in and conducts business in this judicial district and because most of the acts and/or omissions complained of herein occurred in this judicial district.

1

3. Plaintiff has satisfied and exhausted the procedural and administrative requirements and prerequisites related to the claims in this Complaint by: (a) duly filing a timely Complaint against Defendant with the Pennsylvania Human Relations Commission ("PHRC") (Docket No. 201604278) on March 9, 2017, alleging harassment and retaliation, and a timely, dual-filed Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC")(Charge No. 17F-2017-60477) and; (b) the PHRC mailed a notice of right-to-sue letter concerning the allegations in this Complaint on April 5, 2018, and the EEOC mailed a Notice of Right-to-Sue letter concerning the allegations in this Complaint on May 16, 2018; and (c) the instant action is timely filed because it is initiated within 90 days of the receipt of the aforementioned EEOC Notice of Right to Sue.

4. The PHRC found that there was probable cause to believe that Defendant had subjected Plaintiff to unlawful sex harassment and retaliation and the EEOC adopted this conclusion.

## PARTIES

5. Plaintiff is an adult female who resides in Lykens, Dauphin County, Pennsylvania.

6. Plaintiff is a registered nurse, licensed by the Commonwealth of Pennsylvania, and has been so licensed for approximately seven years.

7. Defendant is a Pennsylvania professional corporation having its registered office at 3940 Locust Lane, Harrisburg, Dauphin County, PA 17109, and provides medical services within correctional institutions as a contractor.

8. At all times relevant herein, Defendant acted or failed to act through its agents, servants, and employees, each of whom was acting within the scope of his or her employment at all times relevant herein.

9. Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 28 U.S.C. § 2000e-2 *et seq.*, because it is engaged in an industry affecting interstate commerce and because it maintains or maintained fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year, both at present and during the relevant time period.

10. Defendant, in fact, employs, and employed during the relevant time period, more than 500 individuals in several states in the Northeastern and Mid-Atlantic United States.

11. Defendant also employs a sufficient number of employees to satisfy the jurisdictional requirements of the Pennsylvania Human Relations Act, which requires a minimum of four employees for coverage.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

13. At all times material hereto, Defendant had a contract with Dauphin County, Pennsylvania to provide medical and related services, including nursing services, to the inmate population at the Dauphin County Prison.

14. On July 26, 2016, PrimeCare hired Ms. Hartsough as the Director of Nursing at the Dauphin County Prison.

15. Jamie Fetterolf ("Ms. Fetterolf") was employed by Defendant as its Health Services Administrator at the Dauphin County Prison.

16. Ms. Fetterolf was Plaintiff's immediate supervisor.

17. Approximately one week after beginning work for PrimeCare, Ms. Hartsough began dating a male employee of the Dauphin County Prison.

18. Shortly thereafter, Ms. Fetterolf told Plaintiff, "You're a fucking whore. You've only been here two weeks, and if you're opening your legs to everybody, that's not my business."

19. In late August 2016, Ms. Hartsough continued to date the same male employee of the prison.

20. Every day from late August until the wrongful termination of her employment, Plaintiff was subjected to vicious harassment from Ms. Fetterolf who repeatedly and maliciously called her a "whore," a "slut," and a "slut puppy."

21. Ms. Fetterolf made these comments to Plaintiff not only while they were alone, but also in front of her coworkers, corrections officers, PrimeCare executives and, frighteningly, inmates.

22. This constant harassment aimed at Ms. Hartsough made work extremely stressful for her every day; caused her immense humiliation and embarrassment; caused her to feel ill; forced her to defend herself in the workplace every day against malicious and false allegations that she was sexually promiscuous in the workplace; caused her not to want to go to work; caused her to lose sleep for fear of losing her job; and caused her to fear for her reputation.

23. On August 29, 2016 Plaintiff complained to Kelly Rhoads ("Ms. Rhoads"), PrimeCare's Regional Manager and Ms. Fetterolf's supervisor, that Ms. Fetterolf was harassing her as described herein.

24. After Plaintiff complained to Ms. Rhoads, Ms. Fetterolf continued to harass Plaintiff as described herein.

25. On August 31, 2016, Plaintiff made a second complaint about Ms. Fetterolf's harassment, this time to PrimeCare Vice President of Operations,

Derrick Hughes and to PrimeCare Vice President Frank Komykoski (together "PrimeCare Senior Management").

26. PrimeCare Senior Management met with Ms. Fetterolf and Ms. Hartsough that same day and, when asked to explain her behavior toward Plaintiff, Ms. Fetterolf declared, "She is a whore."

27. Despite Plaintiff's complaints of unlawful harassment to Ms. Rhodes and PrimeCare Senior Management, Defendant did not discipline or take any meaningful or corrective action against Ms. Fetterolf.

28. Despite making two complaints of harassment, one to Ms. Fetterolf's supervisor and one to senior members of PrimeCare's executive staff, Ms. Fetterolf's harassment of Plaintiff continued until PrimeCare terminated Plaintiff without cause.

29. Shortly after Plaintiff complained about Ms. Fetterolf's harassment, Marcy Hoffman ("Ms. Hoffman"), PrimeCare's Director of Human Resources, asked Plaintiff, "Can't we give her [referring to Ms. Fetterolf] a pass?"

30. Plaintiff's observation that Ms. Fetterolf continued to harass her even after twice complaining to PrimeCare executives of Ms. Fetterolf's harassment, coupled with Ms. Hoffman's statement to the effect that Human Resources did not want to discipline Ms. Fetterolf, caused Plaintiff to form the reasonable belief that

any further complaints about Ms. Fetterolf's harassment to Defendant would be futile.

31. Throughout September 2016, beginning within days of Plaintiff's two complaints about Ms. Fetterolf's harassment, PrimeCare began to assign Plaintiff mundane and demeaning work assignments; ignored her vacation requests; and changed her schedule against her wishes to hours that were less convenient for her, all while Ms. Fetterolf continued harassing Plaintiff.

32. On September 30, 2016, Vice President of Operations Derrick Hughes ("Mr. Hughes") terminated Plaintiff's employment without warning or notice.

33. At the time of her termination, Mr. Hughes told Plaintiff, "Due to recent events, it is in the best interests of the company to let you go."

34. No other explanations for her termination were provided to Plaintiff at that time.

35. During her tenure with Defendant, Plaintiff's work performance was excellent and in accordance with all PrimeCare policies.

36. Plaintiff was never disciplined or counseled about any issues with her work performance or otherwise.

37. Plaintiff was never warned that her job was in jeopardy for any reason and Plaintiff had no reason to believe that was the case.

38. Plaintiff received a termination letter shortly thereafter that suggested she did not "successfully" compete a 90-day probationary period, contrary to the explanation for her termination provided by Mr. Hughes.

## COUNT I
## VIOLATION OF 42 U.S.C. § 2000e-2(a)(1)
### Hostile Work Environment -- Gender

39. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

40. Ms. Hartsough belongs to a statutorily protected class by virtue of her gender, female.

41. As set forth herein, Ms. Hartsough was subjected to harassment by her supervisor, which included verbal attacks using insulting, degrading, disgusting, and offensive names for women.

42. This harassing conduct was not welcomed by Ms. Hartsough.

43. This harassing conduct was motivated by Ms. Fetterolf's understanding that Ms. Hartsough is female and her wrongful belief that Ms. Hartsough engaged in promiscuous sexual activity with men present in the workplace.

44. This harassing conduct was so severe or pervasive that a reasonable person in Ms. Hartsough's position would find Ms. Hartsough's work environment to be hostile or abusive.

45. Ms. Hartsough believed her work environment was hostile or abusive as the result of the harassment to which she was subjected.

46. Defendant's management employees knew, or should have known, of the harassment to which Ms. Hartsough was subjected.

47. Defendant's executive-level employees knew, or should have known, of the harassment to which Ms. Hartsough was subjected

48. Defendant's human resources director knew, or should have known, of the harassment to which Ms. Hartsough was subjected.

49. Defendant permitted and sanctioned unwelcome conduct constituting harassment on the basis of gender by its employee, Ms. Fetterolf, and repeatedly failed to address, curtail, or correct such conduct despite being asked to do so repeatedly by Ms. Hartsough.

50. Enduring this offensive conduct became a condition of continued employment for Ms. Hartsough and she believed her work environment to be hostile as a result of Ms. Fetterolf's conduct.

51. Based upon the foregoing, Plaintiff alleges that Defendant did intentionally and willfully violate Title VII of the Civil Rights Act of 1964, as amended.

## COUNT II
## VIOLATION OF 42 U.S.C. § 2000e-3(a)
### Retaliation for Engaging in Protected Conduct

52.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

53.     As set forth herein, Ms. Hartsough engaged in activity protected by Title VII of the Civil Rights Act of 1964, as amended, by opposing unlawful harassment by complaining to Defendant that Ms. Fetterolf was harassing her because of her gender, female, and by reporting that Ms. Fetterolf repeatedly and unrelentingly called her a "whore," a "slut," and a "slut puppy."

54.     Defendant was aware that Ms. Hartsough was being subjected to unlawful harassment because of her gender because of Ms. Hartsough's reports of the harassment.

55.     Defendant was aware that Ms. Hartsough was being subjected to unlawful harassment because of her gender because of the presence of its management, executive, and human resources employees in the workplace and their observation of Ms. Fetterolf's behavior.

56.     In response to Ms. Hartsough's protected activity, Defendant retaliated against Ms. Hartsough by assigning her demeaning tasks, assigning her no tasks, changing her work schedule without her consent despite Defendant's knowledge that her new schedule was not as favorable to Ms. Hartsough, denying

her vacation requests, permitting dangerous working conditions of which they had knowledge to continue unmitigated, and terminating her employment.

57. Ms. Hartsough's protected activities regarding the harassment to which she was subjected were a determinative factor in Defendant's decision to terminate her employment.

58. Ms. Hartsough's protected activities regarding the harassment to which she was subjected were a motivating factor in Defendant's decision to terminate her employment.

59. Based upon the foregoing, Ms. Hartsough alleges that Defendant did intentionally and willfully violate Title VII of the Civil Rights Act of 1964, as amended.

## COUNT III
## VIOLATION OF 43 Pa. C.S. § 955(a)
### Hostile Work Environment -- Gender

60. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

61. Based upon the foregoing, Plaintiff alleges that Defendant did intentionally and willfully violate the Pennsylvania Human Relations Act because Defendant subjected her to a hostile work environment because of her gender.

## COUNT IV
## VIOLATION OF 43 Pa. C.S. § 955(d)
### Retaliation for Engaging in Protected Conduct

62. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

63. Based upon the foregoing, Plaintiff alleges that Defendant did intentionally and willfully violate the Pennsylvania Human Relations Act because Defendant retaliated against her because she engaged in protected activity.

## COUNT V
### Intentional Infliction of Emotional Distress

64. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

65. Based upon the foregoing, Plaintiff alleges that Defendant did intentionally or recklessly, though the acts and/or omissions of itself and the acts and/or omissions of its agents and employees, inflict severe emotional distress upon Plaintiff.

66. The behavior of Defendant's agents or employees was within the scope of their employment with Defendant and exceeded all bounds tolerated by a decent society. These acts include: (a) subjecting Plaintiff to unlawful sexual harassment and retaliation; (b) calling her a "whore" and a "slut" and suggesting that she was sexually promiscuous while in the presence of inmates at the Dauphin County Prison, some of whom were sexually violent offenders or charged with

sexually violent acts such as forcible rape, sexual molestation, and sexual assault; (c) placing Plaintiff in genuine danger; and (d) placing Plaintiff at an increased risk of being sexually assaulted in the workplace.

67. The Defendant and its agents and employees were motivated by personal malice toward Plaintiff.

68. Defendant knew of its employees' outrageous conduct and, in fact, Defendant's management, and executive employees personally observed this conduct and maliciously did nothing to provide Plaintiff with a safe working environment, ultimately terminating her in retaliation for reporting sex harassment in the workplace.

69. As a result of the outrageous and intolerable acts described herein, Plaintiff has suffered, and will continue to suffer, mental anguish, humiliation, fear, physical discomfort, and severe emotional distress, the full amount of which is not yet known, all because of Defendant's actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and that it enter an Order providing that:

a) Defendant is to be permanently enjoined from discriminating against or retaliating against Plaintiff on any basis prohibited under federal and state law;

b) Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating against or retaliating against employees based on any basis prohibited under applicable federal and state law and be ordered to promulgate an effective policy against such discrimination and retaliation and to adhere thereto;

c) Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, retirement benefits, and pension.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination and retaliation at the hands of Defendant until the date of the verdict;

d) Plaintiff is to be awarded actual damages, as well as damages, as permitted by applicable law, for the pain, suffering, and humiliation caused to her by Defendant's actions;

e) Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to

deter Defendant or any other employees from engaging in such misconduct in the future;

    f)    Plaintiff is to be accorded any and all equitable and legal relief as the Court deems just, proper, and appropriate;

    g)    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable law;

    h)    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

    i)    Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure Defendant does not engage in illegal retaliation against Plaintiff or any other witnesses to this action;

    j)    The Court is to maintain jurisdiction of this action after the verdict to ensure compliance with its Orders;

    k)    Plaintiff is to be awarded any and all other statutory damages the Court deems just, proper, and appropriate; and

    l)    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has endorsed this demand on the caption of this Complaint in accordance with the procedural rules.  *See* Fed. R. Civ. P. 38(b).

Respectfully submitted,

/s/ Brian C. Caffrey_____
Brian C. Caffrey, Esquire
PA 42667
SCARINGI & SCARINGI, P.C.
2000 Linglestown Road
Suite 106
Harrisburg, PA 17110
717-657-7770 (voice)
717-657-7797 (fax)
brian@scaringilaw.com

*Attorneys for Plaintiff*

Dated:  August 14, 2018